WILLIAM T. PECK, Appellant, *v.* GEORGE BELKNAP, Impleaded, etc., Respondent.

A disqualification, under the Civil Service Law, for an appointment in the public service of a city, applies not only to the individual who has not passed the requisite examination, but also to the city itself; it cannot employ, or receive into its service, a person not eligible under the law.

An action is maintainable, at the suit of a taxpayer, against city officials, restraining them from entering into a contract of employment, in a position where a civil service examination is required, with one who has not passed the examination, or to restrain the payment of the salary of such an employe out of the funds of the city. (Code Civ. Pro. § 1925; chap. 673, Laws of 1887.)

It is not a defense to such an action that an employment by the city of some person for the purpose specified is proper and lawful, and that the compensation agreed to be paid was not extravagant.

Where an appointment is to a position covered by the regulations for admission into the service of the city by its mayor, and approved by the civil service commission, the relation to the city of the appointee cannot be changed into that of an independent contractor by the execution of a formal contract between them, setting forth the specific duties he is to perform.

The common council of the city of Rochester, by resolution, authorized the employment of some person to keep a book containing a record of the street lamps in the city, and showing the number each day not lighted as reported to him by the policemen of that city. B. was so

employed for a period stated, at a specified salary, and he entered upon the discharge of his duties. The common council, by another resolution, directed the mayor to enter into a contract with B. for the performance by him, at a compensation stated, of the duties specified in the prior resolution, and in addition "to perform such other duties as may be connected with the public street lighting system of the city as may be required" and to furnish "written reports upon any of the subjects aforesaid." The regulations for the admission of persons into the service of the city, after certain exceptions, classified the service as follows: "Schedule B (Part one). All officers and members of the Police and Fire Department. (Part two). All other subordinate officers and assistants." Appointments in part two were required to be made from persons whose names were certified by the board of examiners. B. had never been examined, nor was his name certified by that board. *Held,* that B., under both resolutions, was an assistant to the lamp committee, with duties merely clerical, and so, his employment fell within part two, and his admission into the city service was illegal; that any payments made to him by the city officials would be a waste of the city funds, and, therefore, that an action was maintainable, at the suit of a taxpayer, to restrain such payment.

*Peck* v. *Belknap* (55 Hun, 91), reversed.

(Argued December 10 1891; decided January 20, 1892.)

APPEAL from order of the General Term of the Supreme Court in the fifth judicial department, made October 1, 1889, which reversed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*John H. Hopkins* for appellant. The plaintiff, as a taxpayer of the city of Rochester, was entitled to the relief prayed for. (*Osterhoudt* v. *Rigney,* 98 N. Y. 222; *Talcott* v. *City of Buffalo,* 34 N. Y. S. R. 873, 874, 875; *People ex rel.* v. *Village of Little Falls,* 8 N. Y. Supp. 512; Laws of 1887, chap. 673; *Ayers* v. *Lawrence,* 59 N. Y. 192; Code Civ. Pro. § 1225; *Rogers* v. *City of Buffalo,* 123 N. Y. 173; 22 Abb. [N. C.] 144; 2 N. Y. Supp. 326.) The resolution of the common council clearly contemplated the employment of the defendant Belknap as a subordinate officer, clerk or assistant in the civil service of the city of Rochester; and he was not

eligible to such employment until he had passed the requisite examination. (Laws of 1883, chap. 354, § 8; Laws of 1884, chap. 410, § 2; *Rogers* v. *City of Buffalo*, 123 N. Y. 173; *Aiken* v. *Wasson*, 24 id. 482; *Coffin* v. *Reynolds*, 37 id. 640; *Wakefield* v. *Fargo*, 90 id. 213.)

*Henry J. Sullivan* for respondent. The employment of the defendant Belknap, even if it were one under the terms of the resolution of December 20, 1887, was not a violation of any of the provisions of the Civil Service Act. (Laws of 1883, chap. 354, § 7; Laws of 1884, chap. 410, § 2; *People ex rel.* v. *Lacombe*, 99 N. Y. 49.) The entering into the contract provided for in the resolution of December 20, 1887, by the mayor and city with Mr. Belknap, was not in violation of the so-called Taxpayers' Act. (*Talcott* v. *City of Buffalo*, 125 N. Y. 280.) This action will not lie, for the reason that it is not brought to protect any interest of the plaintiff, as a taxpayer. (*Hull* v. *Ely*, 2 Abb. [N. C.] 440; *Kemball* v. *Hewitt,* 3 N. Y. Supp. 756; 22 N. Y. S. R. 311.) The contract provided for in the resolution of December 20, 1887, was one which could have been performed by means of agents, as well as personally, or, in other words, it constituted the defendant Belknap an independent contractor. (*Schenck* v. *Mayor, etc.,* 10 Hun, 124; *Osterhoudt* v. *Rigney*, 98 N. Y. 222.)

Brown, J. This action was brought by the plaintiff as a taxpayer of the city of Rochester to procure a judgment restraining the mayor of said city from entering into a contract of employment with the defendant Belknap on behalf of the city, whereby said Belknap was to render during a designated period certain services relating to street lights particularly set forth and enumerated in a resolution of the common council, and to restrain the city clerk and treasurer from drawing upon or paying out to said Belknap from the funds of the city any money under said resolution.

The ground upon which this judgment was sought was that Belknap had not passed the examination which, under the Civil Service Law of the state and the regulations prescribed

by the mayor, it was essential he should pass before entering into the public service of the city.

It appeared that about November 1, 1887, the common council of the city had, by resolution, authorized the employment by the lamp committee of some person to whom the policemen of the city were to be required to report the number of street lamps unlighted, and who should keep a book which should contain a record by streets of the gas and electric lamps of the city, and their location, and which should each day show the number not burning; and pursuant to this resolution, on or about November fifteenth, said Belknap had been employed by the lamp committee until April 1, 1888, at a salary of seventy dollars per month, and on November nineteenth he entered upon the discharge of his duties, and the court found as a fact that he continued to discharge them until the end of the term designated. On December 20, 1887, the common council passed another resolution which directed the mayor to enter into a contract with said Belknap to perform until April 1, 1888, the duties specified in the resolution before referred to, and in addition to keeping a record of the unlighted street lamps, he was "to perform such other duties as may be connected with the public street lighting system of the city * * * as may be required by said committee or this common council, and to furnish to said committee and the common council written reports upon any of the subjects aforesaid," and for which he was to receive as compensation the sum of $313.33 in three equal payments on the first days of February, March and April.

This resolution was vetoed by the mayor on the ground that it was in contravention of the Civil Service Law of the state, but was subsequently repassed over the veto by the common council by a two-thirds vote.

It further appeared that the regulations for the admission of persons into the service of the city prescribed by the mayor and appoved by the civil service commission applied to all positions in the public service, except to "elective officers, subordinates of the city treasurer, and persons employed by or who

seek to enter in the service under the board of education." That, with that exception, the service was classified as follows: " Schedule B. (part one). All officers and members of the police and fire department." (Part two). "All other subordinate officers and assistants." Schedule D. "All persons employed as laborers or day workmen."

For appointments under Schedule D no examination was required. Applicants for appointment under Schedule B were to be examined as provided in the regulations, and appointments to any positions in part two were to be made from persons whose names were certified by the board of examiners.

It was not disputed that Belknap's name had not been certified by the board of examiners, nor that he had never been examined.

The Special Term decided that the employment of Belknap by the lamp committee under the resolution of November first, and the contract directed to be entered into by the mayor by the resolution of December 20, 1887, were both illegal, and that the payment of any funds of the city as directed by said resolution would constitute waste or injury to such funds within the meaning of chap. 673, Laws of 1887, and gave judgment in accordance with the prayer of the complaint. The General Term reversed the judgment and dismissed the complaint on the grounds, first, that the contract directed to be entered into was not an illegal one, and second, that Belknap was not a subordinate officer, clerk or assistant of the city, but was an independent contractor, and hence not within the terms of the Civil Service Law.

An action against the officers of a municipal corporation to prevent any illegal official act on their part, or to prevent waste or injury to any property or funds of such corporation is expressly authorized by the legislature in the several acts for the protection of taxpayers. (Code Civ. Pro. § 1925; Chap. 673, Laws of 1887.)

These acts have very recently received judicial construction in this court (*Talcott* v. *City of Buffalo*, 125 N. Y. 280; *Ziegler* v. *Chapin*, 126 id. 342), and whatever difference of opinion existed in those cases with reference to the scope of

the laws, the power of the court to interfere on the suit of a taxpayer and restrain illegal official action was not questioned or denied.

The conclusion of the General Term that the employment of Belknap was not an illegal act appears to have been founded upon a consideration of the provisions of the charter of the city, and the power there conferred upon the common council "to provide for and regulate the lighting of the streets and the protection of the public lamps," and the argument was that as the employment of some person for the purpose specified was proper and lawful, and the compensation was not extravagant, the pecuniary result to the taxpayer was the same whether the employe passed the civil service examination or not, and there was no waste of or injury to the public funds. This construction overlooks the illegal character of the official act contemplated, ignores the Civil Service Law and justifies its violation.

That it cannot prevail is too plain to need argument to controvert it. Precisely the same question was presented and overruled in the case of *Rogers v. Common Council of Buffalo* (123 N. Y. 173) and while not argued by counsel in this court, was raised by the findings and exceptions and involved in the decision.

That cannot be legal which is forbidden by law, and in respect to the legality of a contract no distinction is apparent between one, the subject matter of which is not within the power of the common council, and one within its power but attempted to be made with a person with whom the common council is forbidden by law to contract. The disqualification under the Civil Service Law applies not only to the individual who has not passed the requisite examination, but also to the city itself. It cannot employ or receive into its service a person not eligible under the law.

Section 8 of the act as amended by chapter 410 of the Laws of 1884 provides that after the termination of three months from the passage of that act "no officer or clerk shall be appointed and no person shall be admitted to or be promoted

in either of said classes" (in the public service of the city) "until he has passed an examination or is shown to be exempted from such examination in conformity with such regulation," and in the presence of that plain provision of the statute it is idle to argue the question of the power of the common council to employ as a clerk or subordinate officer one who has not passed the examination required by the regulations prescribed by the mayor of the city.

The second ground adopted by the General Term is equally untenable. A formal contract between Belknap and the mayor in which should be set forth the specific duties he was to perform, as they were enumerated with much detail in the resolution of December twentieth, could not change his relation to the city or transform an ordinary clerk into an independent contractor.

At the time of the adoption of that resolution he had been rendering service to the city for more than a month under an employment by the lamp committee, pursuant to the resolution of November first, heretofore referred to, and his contract was to be for the same service and at the same wages as specified in the resolution of December twentieth, and was to cover the past services and the back pay.

He was under both resolutions an assistant to the lamp committee, and his duties were wholly clerical. His employment fell within part two of Schedule B of the mayor's regulations, and neither the common council nor the mayor had any power to employ him unless his name was certified by the board of examiners.

His admission into the service of the city was plainly illegal and the attempted contract created no legal liability on the part of the city, and any payments made to him by the city officers under that employment would have been a waste of the city's funds.

The order of the General Term should be reversed and the judgment of the Special Term affirmed.

All concur.

Order reversed and judgment affirmed.