JAMES ROGERS, Appellant, *v.* EDWARD C. O'BRIEN et al., Composing the Board of Docks of the Dock Department of the City of New York, Respondents.

1. TAXPAYER'S ACTION — NEW YORK CITY DOCK DEPARTMENT. The "Act for the Protection of Taxpayers" (L. 1881, ch. 531, as amended by L. 1892, ch. 301), does not authorize a lessee of the wharfage of a bulk-head from the city of New York to maintain a taxpayer's action to enjoin the dock department from evicting him from land belonging to the city, near the bulkhead but not appurtenant thereto, occupied by him without right, on the theory that the eviction would be an "illegal official act" on the part of the dock department, although assuming to act in the interest of the city, merely for the reason that the control of the land is vested in some other department of the city government.

2. THE TAXPAYERS' ACT — "ILLEGAL OFFICIAL ACTS." The authority conferred by the Taxpayers' Act upon a private individual to maintain an action to enjoin "illegal official acts" extends only to acts which, if per-formed, would produce a public injury, and the remedy for which by injunction was previously available to the attorney-general or some body or officer acting on behalf of the public.

3. EQUITY — INJUNCTION. Equity will not lend its aid by injunction to protect a trespasser in the possession of realty belonging to a munici-pality, against eviction by a municipal department invested with large authority over municipal property and assuming to act in the interest of the municipality, merely because the proposed action of the department

is beyond its authority, but will leave the occupant to his remedy, if any, in an action for damages in case he is evicted.

*Rogers* v. *O'Brien*, 7 App. Div. 612, affirmed.

(Argued June 10, 1897; decided June 22, 1897.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 10, 1896, which affirmed a judgment in favor of defendant entered upon a decision of the court dismissing the complaint on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edmund Luis Mooney* for appellant. Plaintiff, as a tax-payer, was entitled to judgment restraining the illegal official acts complained of. (*Talcott* v. *City of Buffalo*, 125 N. Y. 285; *Adamson* v. *U. R. R. Co.*, 74 Hun, 3; *Warrin* v. *Baldwin*, 105 N. Y. 534; *Calhoun* v. *Millard*, 121 N. Y. 69; *Rogers* v. *City of Buffalo*, 123 N. Y. 173; *Ziegler* v. *Chapin*, 126 N. Y. 342; *Peck* v. *Belknap*, 130 N. Y. 394; *Rathbone* v. *Wirth*, 150 N. Y. 459; *Squire* v. *Preston*, 82 Hun, 88; *Armstrong* v. *Grant*, 56 Hun, 226; *Standart* v. *Burtis*, 46 Hun, 82; *Parfitt* v. *Ferguson*, 3 App. Div. 176.) The plaintiff was entitled to the judgment demanded by reason of his individual interest, aside from his status as a taxpayer. (*Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *Spencer* v. *Kilmer*, 151 N. Y. 390; *Mayor, etc.*, v. *Carleton*, 113 N. Y. 284; *Mission* v. *Cronin*, 14 Wis. 372; *Boyer* v. *Village of Little Falls*, 5 App. Div. 1; *Avery* v. *N. Y. C. & H. R. R. R. Co.*, 7 N. Y. Supp. 341; *Tobias* v. *Cohn*, 36 N. Y. 363; *Flood* v. *Van Wormer*, 147 N. Y. 284; *Excelsior B. Co.* v. *Village of Haverstraw*, 142 N. Y. 146; *People ex rel.* v. *Bd. of Health*, 140 N. Y. 1; *P. P. Co.* v. *Williamson*, 18 Wkly. Dig. 287; *Seneca Nation* v. *John*, 27 Abb. [N. C.] 253; *Ellison* v. *Allen*, 30 N. Y. Supp. 441.) The defendants' acts complained of were illegal. Defendants had no jurisdiction or control over the strip of land mentioned in the complaint. (*Williams* v. *Mayor, etc.*, 105 N. Y. 437; L. 1871, ch. 574;

L. 1882, ch. 410, § 170; *Maxmilian* v. *Mayor, etc.*, 62 N. Y. 160; *Starin* v. *Edson*, 112 N. Y. 206; *N. Y. Fire Department* v. *A. S. S. Co.*, 106 N. Y. 566; *People* v. *Mallory*, 46 How. Pr. 281; *C. S. S. Co.* v. *Voorhies*, 18 J. & S. 253; *Mayor, etc.*, v. *Met. Bd. of Health*, 31 How. Pr. 385.) The dismissal of the complaint was erroneous, and the judgment appealed from should be reversed. (*McNally* v. *P. Ins. Co.*, 137 N. Y. 389; *Scofield* v. *Hernandez*, 47 N. Y. 313; *Place* v. *Hayward*, 117 N. Y. 487; *Murray* v. *Micolino*, 83 Hun, 564; *Cunningham* v. *Fitzgerald*, 138 N. Y. 165; *E. B. Co.* v. *Vil. of Haverstraw*, 142 N. Y. 146.)

*Francis M. Scott* for respondents. The plaintiff does not bring himself within the Taxpayers' Act. (*Kimball* v. *Hewitt*, 17 N. Y. S. R. 743; 15 Daly, 124.) The plaintiff has no right in the land in question. (*Boreel* v. *Mayor, etc.*, 2 Sandf. 552; *Comr. of Pilots* v. *Clark*, 33 N. Y. 251; *Williams* v. *Mayor, etc.*, 105 N. Y. 419; *Kingsland* v. *Mayor, etc.*, 110 N. Y. 569.) The plaintiff is estopped from denying the jurisdiction of the board of docks over the property in question. (*Young* v. *Campbell*, 75 N. Y. 525.)

ANDREWS, Ch. J. The plaintiff, in the name of his bookkeeper, on May 1, 1894, leased from the department of docks, acting for the city, the right to collect the wharfage at the wharf and bulkhead on the North river in the city of New York, between 132d and 133d streets, for the term of five years, at the annual rent of $300. He entered into possession of the rights granted by the lease, and in addition he took possession without any authority or right whatever of a strip of land owned by the city in the rear of the bulkhead and divided therefrom by a carriageway, of the same length as the bulkhead and fifty feet in width, which he used for the piling of brick and lumber discharged from vessels at the wharf or to be shipped at that point. He has continued in the occupation of this strip without the payment of any rent. In September, 1895, the dock commissioners informed him

that if he desired to continue to occupy it he must pay rent therefor at the rate of $1,000 a year. He negotiated to secure an abatement of the rent demanded, but was unsuccessful. He claimed that the right to occupy this land passed to him as appurtenant to the lease of the wharf, or that if it did not so pass the land was not within the jurisdiction or control of the dock commissioners, but of the commissioners of the sinking fund, who alone could interfere with his possession. The dock commissioners however, disregarded this claim, and in October passed a resolution requiring the superintendent of docks to oust him from the premises, he having before the resolution was passed refused to pay the rent demanded. Thereafter, October 25th, 1895, before the resolution was carried into effect, he commenced this action under the "Act for the Protection of Taxpayers," as amended by chapter 301 of the Laws of 1892, to restrain the defendants from enforcing the resolution, on the ground that his eviction by the defendants would be illegal and in excess of their authority. It is conceded that the plaintiff has no shadow of right to the possession of the land. It did not pass to him under the lease or as appurtenant thereto. The city of New York has the unquestioned title and the present right of possession. It never put the plaintiff in possession or gave him any license to occupy it. The plaintiff alleged in the complaint that when the lease was executed the dock commissioners represented to him that the right to use the land passed with the lease and that he entered thereon with their consent. This was denied in the answer, and the plaintiff on the trial did not undertake to sustain the allegation by proof. Upon the uncontradicted evidence the plaintiff is a mere intruder on the premises. The attempt on the part of the plaintiff to sustain this action under the act for the protection of taxpayers will, if successful, be a new departure. The plaintiff relies upon the literal language of the act of 1892, first found in the act of 1881. The first section authorizes the prosecution by a taxpayer of an action against officials or public agents acting for or on behalf of any county,

town, village or municipal corporation, to " prevent any
illegal official act on the part of any such officers, agents, com-
missioners or others persons, or to prevent waste or injury
to, or to restore and make good, any property, funds or estate
of such county, town, village or municipal corporation," etc.
It is said that the ejection of the plaintiff from the land by
the dock commissioners would be an illegal act, for the reason
that the control of the land is vested in some other depart-
ment of the city government, and that the dock commis-
sioners, although they are assuming to act in the interest of
the city, the real owner of the land, are transcending their
authority, and that, therefore, the Taxpayers' Act is available
to the plaintiff.    In substance, the claim is that the plaintiff
as a taxpayer may institute an action under the act of 1892,
which, if maintained, will enable him to retain the possession
of the property of the city, which he occupies as a mere tres-
passer and for which he has paid no rent, until some proper
authority representing the city, other than the defendants, call
upon him to surrender it to its lawful owner.    If such an
action can be maintained, the act, in place of being one for
the protection of taxpayers, would be one giving an affirma-
tive remedy to a wrongdoer who has appropriated the property
of a municipality, to prevent its reclamation by the officers of
one of its principal departments, if it shall appear that they
are proceeding beyond the precise limits of their authority.
The act is not available for such a purpose.    The words " to
prevent any illegal official act," interpreted by the history of
the new legislation commencing in 1872, in connection with
the clauses with which these words are associated, plainly
relate to acts germane to the purpose of the new legislation,
which was to extend the remedy for the protection of tax-
payers against frauds and peculations of public officials and to
prevent usurpation by public bodies or agents, of powers not
granted, the exercise of which may imperil the public
interests.    The legislation of 1872, and that which followed
it, did not confer, for the first time, on courts of equity, juris-
diction to restrain public bodies and public officers from pro-

ceeding in violation of law to the prejudice of public rights. The courts, prior to this legislation, were accustomed to interfere to prevent usurpation of powers by public officials, from which public injury might result, and to restrain illegal acts threatened, which, if performed, would produce public mischief. (See *People* v. *Canal Board,* 55 N. Y. 390, and cases cited; *People ex rel. Negus* v. *Dwyer,* 90 N. Y. 402, 410.) The words in the act of 1892 referred to cases of this general character, and permit the remedy by injunction to be invoked by a taxpayer, which before was available to the attorney-general or some body or officer acting on behalf of the public. The cases cited, founded upon the Taxpayers' Act, are all consistent with this interpretation of the words quoted from the statute of 1892, and the language of the opinions, read in connection with the facts, are in harmony with this construction. (*Warrin* v. *Baldwin,* 105. N. Y. 534; *Ziegler* v. *Chapin,* 126 id. 342; *Peck* v. *Belknap,* 130 id. 394; *Rathbone* v. *Wirth,* 150 id. 459.) It is absurd to suppose that the legislature, by the statute, intended to draw into the preventive jurisdiction in equity, at the instance of any taxpayer, any proposed illegal official act, irrespective of the fact whether the act sought to be restrained involves a waste of public property or a violation of public rights, or any injury to the interests of taxpayers, as such. It is needless to say that the case presented by this record would not have been a ground for an appeal to a court of equity antecedent to the law of 1881, by a representative of the public, to restrain by injunction an official from doing the act sought to be restrained in this action. We assume, without examining the question, that the jurisdiction and control of the premises in question was not vested in the defendants, but in another city department, but upon that assumption the Taxpayers' Act gave the plaintiff no standing to maintain the action.

The plaintiff insists, however, that he is entitled to maintain the action as an individual without reference to his standing as a taxpayer, upon his possessory right, although he concedes that his possession is wrongful against the city of

New York, the owner of the premises. His possession, he insists, was good as against the defendants, they having no jurisdiction over the property, and he contends that the court will interfere to protect it from disturbance by strangers, and that the defendants are in that attitude. The usual and ordinary remedy for the redress of injuries to real property is legal and not equitable. Courts of equity interpose an anticipatory remedy only under special circumstances. The prevention of irreparable injury or multiplicity of suits, or where the remedy at law is inadequate, are the usual grounds for such interposition. No such grounds appear in this case. The plaintiff, in his complaint, asserts that irreparable injury will follow the defendants' proceeding to eject him. There is no foundation in the facts for this allegation. Moreover, the remedy by injunction will not be granted where it will operate inequitably or contrary to the real justice of the case. (*Troy & Boston R. R. Co.* v. *Boston, Hoosac T. & W. R. Co.*, 86 N. Y. 107; *Jerome* v. *Ross*, 7 John. Ch. 315.) In this case the remedy by injunction is invoked by a wrongdoer against defendants, who are assuming to act in the interests of the city and who, in fact, are invested with large authority over the wharves, bulkheads and property connected therewith. Their right and jurisdiction are questioned by the plaintiff. Assuming that the proposed action of the commissioners is beyond their authority, we are of opinion that a court of equity will not lend its aid by injunction to protect the plaintiff in possession of the property, but will leave him to his remedy, if any, against the defendants in an action for damages in case he should be evicted.

The judgment should be affirmed.

All concur, except GRAY, J., absent.

Judgment affirmed.