J. WARREN GREENE, Appellant, *v.* CHARLES H. KNOX et al., as Civil Service Commissioners of the City of New York, et al., Defendants, and EDWARD A. GAUS et al., Respondents.

TAXPAYER'S ACTION — ACTION UNDER STATUTES (CODE CIV. PRO. § 1925; L. 1892, CH. 301, OR L. 1899, CH. 370, § 27) CANNOT BE MAINTAINED TO RESTRAIN PAYMENT OF SALARY TO PUBLIC OFFICERS HOLDING PRESUMPTIVELY VALID APPOINTMENTS.   A taxpayer's action to restrain the payment of salaries to public officers holding regular and presumptively valid appointments in the civil service cannot be maintained under any of the statutes authorizing such actions (Code Civ. Pro. § 1925; L. 1892, ch. 301, or L. 1899, ch. 370, § 27), upon the ground that, although the appointments are valid in form, they are invalid in fact; since the salary of an office is property, the right to which depends upon the right to the office and the former cannot be constitutionally taken away until the latter is destroyed, and when the question of title to the office is not collateral or incidental, but on the contrary is the central and pivotal question, the proper remedy is a proceeding by quo warranto.

*Greene* v. *Knox*, 76 App. Div. 405, affirmed.

(Argued June 3, 1903; decided June 25, 1903.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered November 21, 1902, which reversed an interlocutory judgment of Special Term overruling a demurrer to the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward M. Shepard* and *Samuel H. Ordway* for appellant.   The plaintiff has legal capacity to sue.   (L. 1892, ch. 301; L. 1899, ch. 370, § 27; *Rogers* v. *Common Council*, 22

Abb. [N. C.] 144; 123 N. Y. 173; *Peck* v. *Belknap*, 130 N. Y. 394; *Ayres* v. *Lawrence*, 59 N. Y. 192; *Bush* v. *O'Brien*, 164 N. Y. 205; *Wenk* v. *City of New York*, 171 N. Y. 607; *Ziegler* v. *Chapin*, 126 N. Y. 342.) The complaint states facts sufficient to constitute a cause of action. (*People ex rel.* v. *Bd. of Health*, 153 N. Y. 513; *People ex rel.* v. *Martin*, 36 N. Y. Supp. 851; *Rogers* v. *Common Council*, 123 N. Y. 173; *Peck* v. *Belknap*, 130 N. Y. 394.) There is no question of the title to office involved in this action. (*Emery* v. *Pease*, 20 N. Y. 62; *Wetmore* v. *Porter*, 92 N. Y. 76; *Mitchell* v. *Thorne*, 134 N. Y. 536; *Fay* v. *Sugden*, 174 N. Y. 87.) Even if the title to an office were involved in this action, that would be no reason for holding that it cannot be maintained. (*People ex rel.* v. *Dalton*, 158 N. Y. 204; *People ex rel.* v. *Scannell*, 63 App. Div. 243; *Matter of Jones* v. *Willcox*, 80 App. Div. 167; *Matter of Brenner*, 170 N. Y. 185.)

*William C. De Witt* for Edward A. Gaus, respondent. A taxpayer's action will not lie for relief demanded in the complaint. (L. 1892, ch. 301, § 1; *Demarest* v. *Mayor, etc.*, 147 N. Y. 303; *People ex rel.* v. *Sheffield*, 24 App. Div. 214.) In the case of an appointment, regular and valid upon its face, where the appointee is in full possession and exercise of his powers and duties, but in respect to which the plaintiff avers that, by proof *aliunde*, the appointment may be vacated, title to the office is triable by quo warranto alone. (Code Civ. Pro. § 1948; *People ex rel.* v. *Board of Police Comrs.*, 174 N. Y. 450; *People* v. *Tobey*, 153 N. Y. 381; *Stuber* v. *Coler*, 164 N. Y. 22; *Melody* v. *Goodrich*, 67 App. Div. 368; 170 N. Y. 185; *Talcott* v. *City of Buffalo*, 125 N. Y. 280.)

*Abram I. Elkus* and *Joseph M. Proskauer* for James Gannon et al., respondents. Title to office is involved which cannot be tested in a taxpayer's action. (*City of Buffalo* v. *Mackay*, 15 Hun, 204; *Stuber* v. *Coler*, 164 N. Y. 22.) Quo warranto is the only method of testing title to office. (*People*

28

*ex rel.* v. *Police Comrs.,* 174 N. Y. 450; *People ex rel.* v. *Goetting,* 133 N. Y. 569; *People ex rel.* v. *Brush,* 146 N. Y. 60; *Melody* v. *Goodrich,* 67 App. Div. 368; *Matter of Brenner,* 170 N. Y. 185; Collier on Civil Service, 139, 141; Mechem on Public Offices & Officers, § 478; *Johnson* v. *Garside,* 65 Hun, 208; Code Civ. Pro. § 1948.)

WERNER, J.    This action is brought by the plaintiff as a taxpayer of the city of New York to restrain the payment of salaries to the defendants Gaus, Gannon and Lantry, who are police captains.   The other defendants are interested only in their official capacities and the police captains above named will, therefore, be referred to as the defendants.

The complaint is demurred to on the following three grounds: *First.* That the complaint does not state facts sufficient to constitute a cause of action.   *Second.* That the plaintiff has no legal capacity to sue.   *Third.* That causes of action have been improperly united in the complaint.

The second and third grounds of demurrer may be at once eliminated from the discussion because by the express terms of the statutes which will hereafter be referred to in another connection, a qualified taxpayer is given legal capacity to sue in such an action as this; and because sections 447 and 452 of the Code of Civil Procedure clearly authorize the joinder as defendants of persons whose separate interests spring from a common cause, in such a way that an adjudication upon their several rights cannot be had without the determination of the fundamental question upon which the rights of all depend. (*Brinkerhoff* v. *Brown,* 6 Johns. Ch. 139; *Osterhoudt* v. *Board of Supervisors,* 98 N. Y. 239.)

This leaves for discussion the first certified question : " Does the complaint state facts sufficient to constitute a cause of action ? "   There are three statutes which a taxpayer may invoke in aid of an action brought by him for the public benefit against municipal officers or agents.   The first of these statutes is section 1925 of the Code of Civil Procedure, under which a plaintiff may ask for judgment preventing waste of,

or injury to, the estates, funds or property of a municipality. The second statute is chapter 301, L. 1892, under which officers, agents or persons acting, or who have acted, for a municipality may be prevented from doing or continuing illegal official acts, or committing waste, and may be compelled to make good or restore any municipal funds or property unlawfully paid out or appropriated. The third statute is section 27 of the Civil Service Law (Chap. 370, L. 1899), which provides that the right of a taxpayer to bring an action to restrain the payment of salaries out of municipal funds shall not be limited or denied because the office, place or employment affected by the suit "shall have been classified as, or determined to be, not subject to competitive examination."

The allegations of the complaint are very voluminous and specific, but they need not be analyzed in detail, since, in our view of the case, the sufficiency of the pleading depends upon the single question whether the title to office, complete and regular on its face, can be tried in a taxpayer's action brought to restrain the payment of salaries. It must be conceded that if such a title to office can be tried in such an action then a good cause of action is stated; but if the title to office, regular and valid on its face, cannot be tried in such an action, then it is plain that the complaint is bad.

It is affirmatively alleged that the appointments of the defendants were regular in form and were made in compliance with every requirement of the letter of the law that was essential to their validity. The allegations to that effect are coupled with others that impugn the regularity of these appointments as being fraudulent and colorable, but the latter allegations are largely statements of mere conclusions of law which are not admitted by the demurrer, while the former allegations contain statements of fact which, for present purposes, must be regarded as established. We have here then three defendants holding regular and presumptively valid appointments in the civil service, the payment of whose salaries is sought to be enjoined on the ground that, although their appointments are valid in form, they are invalid in fact.

It is apparent from a mere glance at the complaint that the facts which must be proved to support plaintiff's charges of invalidity in the appointments of the defendants are outside of the record, and it is difficult to see how such an action, predicated upon such allegations, can be maintained unless the question of title to office can be tried and decided therein. In this connection it may be observed that counsel for the plaintiff practically concedes that the title to office cannot be tried in such an action as this, although he suggests that " in this scrutiny of the payroll " the validity of the defendants' appointments " will be collaterally considered," but he asserts that " the real aim and object of this action is to enjoin the payment of the salaries of the respondents as police captains."

In the learned counsel's suggestion that the trial of the issues tendered by the complaint will involve at least a collateral consideration of the title to office, we find the keynote to the real question involved. How far can the court probe into the title to office in a taxpayer's action to restrain payment of salaries ? We quite agree to the proposition that in a taxpayer's action to restrain payment of salaries the court may collaterally consider title to office, but not otherwise. Such was the case, for instance, in *Rogers* v. *Common Council of Buffalo* (123 N. Y. 173), where there was no pretense of compliance with the law in the appointment of a street inspector, and where the latter's title to office depended wholly upon the alleged unconstitutionality of the civil service statutes ; and in *Peck* v. *Belknap* (130 N. Y. 394) where the defendant, a lamp inspector, claimed immunity from civil service rules on the ground that he was an independent contractor. In both of these cases the appointments were clearly invalid unless and until the defendants therein could affirmatively establish their respective contentions upon the questions involved, which were clearly presented by the records before the court; and when that proof failed, judgments restraining payments of salaries were proper, because the alleged titles to office were invalid as matter of law.

In the case at bar we have an entirely different condition. The appointments of the defendants are distinctly alleged to have been regular in form, and their invalidity must be established, if at all, by affirmative proof of facts *dehors* the record. Here the question of title to office is not collateral or incidental, but on the contrary it is the central and pivotal question in the case. Until defendants' apparently regular titles to their offices are impeached there is no principle of law or justice under which the defendants can be deprived of their salaries. The salary of an office is property, the right to which depends upon the right to the office, and the former cannot be constitutionally taken away until the latter is destroyed.

These suggestions, we think, suffice to show the untenability of the claim that the defendants' right to their salaries can be adjudicated without passing upon the question of their titles to office, but, even if such a thing were possible, it would be contrary to the orderly and just methods of judicial procedure to relegate public officers, first to an equity forum for the determination of their rights to salaries, and then to a legal forum for the trial of titles to office, with the incongruous possibility that in the former the court might decide that the payment of salaries should be enjoined, and in the latter a jury might affirm the validity of the titles to office upon which the rights to salaries depend. In the absence of some statute which expressly provides for such apparently unreasonable procedure, we shall adhere to the well-established doctrine that " quo warranto " is the proper remedy whenever the title to office is the real thing at stake.

That there has been no deviation from this ancient rule in this court is shown in its latest discussion of this subject in the recent case of *People ex rel. McLaughlin* v. *Police Commissioners* (174 N. Y. 450), where the previous decisions in this state are quite exhaustively reviewed and discussed, and the following statement of the general rule is quoted with approval : " The proceeding by quo warranto is the proper and appropriate remedy for trying and determining the title

to a public office, and of ascertaining who is entitled to hold it; of obtaining possession of an office to which one has been legally elected and has become duly qualified to hold, and also of removing an incumbent who has usurped it, or who claims it by an invalid election, or who illegally continues to hold it after the expiration of his term. * * * From the earliest times the legal remedy for trying a title to an office was by the writ of quo warranto, now a direct action by the Attorney-General. In Blackstone's Commentaries it is stated the writ of quo warranto was an initial writ to try the right of one holding a public office." (Mechem's Public Offices and Officers, sec. 478.)

The views above expressed necessarily involve the conclusion that the complaint does not state a cause of action.

We fully realize that our decision would be much more satisfactory if we could arbitrarily classify, on the one hand, the instances in which titles to offices can be tried in taxpayers' actions to restrain payment of salaries, and, on the other, the instances in which that question cannot be so tried. But scientific exactness is not yet to be looked for in the law of our civil service. The department charged with the administration of that branch of our government has been so recently established, and the statutes and rules relating thereto have been so persistently developed and so frequently amended, that the courts have had to thread their way rather cautiously through the verbiage of civil service legislation, which is constantly before them for construction and application. We do not feel disposed to go further at present than to say that, in a case where the title to office depends, not upon admitted facts or indisputable records, or the plain letter or fair construction of a statute, but upon disputable and extraneous facts, the question cannot be tried in a taxpayer's action brought to restrain payment of salaries, but must be tried in quo warranto, and until so tried the payment of salaries cannot be enjoined.

It has been suggested that under section 27 of the Civil Service Law, a part of which is above quoted, a taxpayer's

action to restrain the payment of salaries will now lie in any case of alleged illegal appointment, without regard to the form in which the question of illegality arises, or the manner in which the allegation is to be proved. As we read that section it was simply intended to bring within the scope of a taxpayer's action cases that may grow out of appointments in the non-competitive class of the civil service, in which there is no competitive examination but only such non-competitive examination as may be prescribed under civil service rules. (Sec. 15, Civ. Ser. Law.) It may be that this amendment to the Civil Service Law was enacted to avoid the effect of the decision in *Chittenden* v. *Wurster* (152 N. Y. 345), which is said by Collier, in his work on Civil Service, to have been construed as holding that a classification made by the proper authority, even if erroneous and improper, must be first set aside in a direct proceeding before any steps could be taken to declare void an appointment made pursuant to such classification ; or it may be that it was intended to accomplish some other purpose that is not clearly shown in its context, but we think it would be doing violence to the ordinary rules of language to hold that it was intended to authorize taxpayers' actions to restrain payments of salaries of civil officers whose appointments are presumptively regular and valid, and who are clearly entitled to their salaries until their titles to office have been properly and directly impeached. It is putting it rather mildly to say that if such was the intention of the legislature in the enactment of section 27, it has been most inadequately expressed. All that can be said of this section with reasonable certainty is that the right to a taxpayer's action is not to be limited or denied by the mere fact that the salary to be affected is attached to an office or place in the non-competitive class. That is a very different thing, however, from declaring in one breath that public officers, whether in the classified or unclassified service, may be deprived of their salaries without an impeachment of their titles to office ; or, in another breath, that titles to office may be tried in any taxpayer's action because an attack has been made upon salaries.

We shall impute to the legislature no intention so repugnant to the plainest principles of equity and justice.

We are not unmindful of the difficulties that beset the civil service authorities in the administration and enforcement of civil service laws and rules, or of the high duty that rests upon our courts to make such laws and rules workable whenever that may be done by fair and reasonable construction, but in doing that we must not ignore or overlook sacred individual rights, or the immutable principles of our common law. The whole case may, therefore, be summed up in the statement that whenever there is an actual contest over a title to office that is regular on its face and presumptively valid, the incumbent is entitled to his day in court on the main question, before the payment of his salary can be interdicted, and, as a general rule, that can only be done properly in the action of quo warranto in a court of law where the issues of fact can be decided by a jury.

The first certified question should be answered in the negative and the order of the Appellate Division affirmed, with costs.

PARKER, Ch. J., GRAY, O'BRIEN, BARTLETT, HAIGHT, JJ. (and CULLEN, J., in result), concur.

Order affirmed.