MATTHEW A. HEERAN, Plaintiff, *v.* CLARENCE A. MCNALLY, as Mayor of the City of Rensselaer, and Others, Defendants.

Supreme Court, Columbia County, April 24, 1930.

---

* Repealed by Laws of 1926, chap. 660.—[REP.

*Dugan & Bookstein [Daniel J. Dugan of counsel], for the plaintiff.*

*John J. Scully, Corporation Counsel, for the defendants.*

McNAMEE, J. On the argument of this application both sides admitted that judgment on the pleadings should be granted, and each asks for that judgment.

A mandamus directing the city clerk and corporation counsel to prepare a proposition and abstract for the purpose of submitting the local law to the electorate has been granted (135 Misc. 874). A temporary injunction has been granted herein restraining the payment of the salaries in question during the pendency of this action. The question to be disposed of here has not been before the court, as the question whether this action could be maintained does not appear to have been considered either in the mandamus proceeding or on the motion for temporary injunction. Appeals from both of those orders are now pending, and the parties indicate their purpose to review the order made here; accordingly, decision is hastened so that the appellate courts may have the entire matter before them for review at the one time.

This action is brought under section 51 of the General Municipal Law on the theory that the local law in question has not become effective for want of submission thereof to the electorate, pursuant to section 15 of the City Home Rule Law (as amd. by Laws of 1925, chap. 397); that those claiming the salaries in question are not entitled to the offices they fill, and, therefore, to the salaries which they claim; and, accordingly, the act of paying these salaries would be an illegal official act within the meaning of said section 51. The defendants admit that the local law has not been so submitted, and insist that its submission to and approval by the electorate is not required by the City Home Rule Law and the city charter (Laws of 1915, chap. 69).

The action is in equity, not only in its nature, but also by the language of the statute. It is not an added jurisdiction given to the court of equity, but may be said to be a new action only because it extends to a taxpayer a right of action which before the original statute could be brought only by the Attorney-General or other appropriate public authority. But this action now available to a taxpayer cannot be based upon every act of a public official that might be characterized as an illegal act, but only upon

that kind of illegal official act which has long been held consistently in this State to be such as courts of equity regarded as calling for the intervention of equity jurisdiction. As said by the Court of Appeals in the *Rogers* case: "It is absurd to suppose that the legislature, by the statute, intended to draw into the preventive jurisdiction in equity, at the instance of any taxpayer, any proposed illegal official act, irrespective of the fact whether the act sought to be restrained involves a waste of public property or a violation of public rights, or any injury to the interests of taxpayers, as such." (*Rogers* v. *O'Brien*, 153 N. Y. 357, 361–363; *Altschul* v. *Ludwig*, 216 id. 459, 462–468.) Thus it is important in disposing of this case to determine whether the act and the circumstances complained of here are such as to call for the intervention of equity within the adjudicated cases.

The answer raised the question that the complaint was insufficient because it failed to allege that the plaintiff had no complete and adequate remedy at law. As before indicated, the action in no sense is an action at common law, either upon the face of the complaint or under the statute. No common-law relief is sought, and none is available herein. In those circumstances, if the action can be maintained, the omission of an allegation that the plaintiff has no complete and adequate remedy at law is not jurisdictional. (21 C. J. 387; 1 Whitehouse Eq. Prac. 173.)

Section 51 of the General Municipal Law gives to a taxpayer an action (a) to prevent an illegal official act, (b) to prevent waste of the city's property, and (c) to compel restitution. There is no question of restitution here; and if the plaintiff can maintain this action he must plead either that waste is about to be committed, or that the mayor, the city clerk and the city treasurer threaten to commit such an illegal official act as has been recognized by courts of equity as a ground for their intervention.

The Court of Appeals has said: "The mere illegality of the official act in and of itself does not justify injunctive relief at the request of the taxpayer," but it must be such an illegal official act "as to imperil the public interests or calculated to work public injury or produce some public mischief." (*Altschul* v. *Ludwig*, *supra.*) That was a case where the court intervened to prevent the approval of plans for the construction of a theatre which if constructed as planned would have been a menace to public safety, and a public nuisance; and it was accordingly held to be an illegal official act, and that a court of equity would assume jurisdiction. And jurisdiction has been thus exercised when the illegal official act involved waste, fraud and peculation on the part of public officers. (*Olmstead* v. *Meahl*, 219 N. Y. 270, 275–277.) In the

*Olmstead* case it was observed that it was never the intention to confer on courts of equity by this statute "jurisdiction over a subject which had always been excluded from their cognizance." (Id. 277.) It is repeatedly stated in the cases that an official act may be of such a character as to peculiarly and injuriously affect a taxpayer in his personal or property rights, and that in such a case and for that reason he may maintain his action under the section in question.

But in considering this branch of the case it must be recognized that in order to make an illegal official act actionable it must be one upon which may be predicated waste of public property, fraud, peculation, endangering public health, safety or morals, or other violence to public interests. And the complaint here must be examined with that understanding of the legislation in question.

The city of Rensselaer is a regularly organized city, with those departments and officers deemed necessary or convenient for the conduct of the affairs of the city. The safety of the inhabitants is largely dependent upon the functioning of the public safety commission; and the two great arms of that commission for the protection of the persons and property of the inhabitants are the police and fire departments. No one would suggest that the affairs of a city could be properly conducted without those two chief agencies of safety. It is equally necessary that those departments of the city government shall be conducted under the direction of persons capable of performing the duties of the chief officers thereof; and incompetency or vacancy in these offices would be unfortunate, if not highly dangerous to the public interest. The defendants Mink, McGowan, Card and Barney have been appointed to the chief offices of the police and fire departments, are performing those duties, and claiming the compensation incident thereto. It does not appear that any other persons are assuming to fill or claiming those offices; and no other persons are claiming any right to the salaries incident thereto. There has been no judgment of ouster pleaded against these departmental officials. In these circumstances the city is not obligated to any other claimants for salaries in question, and cannot be made responsible for a payment thereof to other persons. These departmental officials are at least *de facto* officers, have performed the services of their respective offices, and the amounts of any salaries paid to them for services rendered cannot be recovered by another. This has been held repeatedly. (*Smith* v. *Mayor, etc., of N. Y.*, 37 N. Y. 518; *McVeany* v. *Mayor, etc., of N. Y.*, 80 id. 185; *Terhune* v. *Mayor, etc., of N. Y.*, 88 id. 247; *Nichols* v. *McLean*, 101 id. 526, 533, 537, 538; *Hagen* v. *City of Brooklyn*, 126 id. 643.)

And in view of the nature of and the necessity for the services of these departmental officials, who are in charge of, and who have performed the duties necessary to, the safety of the persons and property of the inhabitants, the routine payment of fixed compensation provided for, and the security of the city against paying another therefor, it cannot fairly be said that the payment of these salaries in these circumstances is a waste of public funds.

The plaintiff contends that he is not bringing this action for the purpose of testing the title to office, but for the purpose of preventing the payment of the salaries in question, because the payment of the salaries would constitute an illegal official act. In view of the allegations of the complaint, it is idle to say that the action is not brought to test the title to office, at least collaterally, when there is nothing in the complaint to support plaintiff's theory, except invalidity of the title to the office in question. The title to office has been heretofore considered " collaterally," in cases to prevent the payment of official salaries, " when there was no pretense of compliance with the law in the appointment " (*Greene* v. *Knox*, 175 N. Y. 432, 436), when the appointment was not regular in form and there was an utter disregard of clear statutory provisions (*Forman* v. *Bostwick*, 139 App. Div. 333). The *Forman* case was one in which the indisputable record before the court showed that the appointee was clearly and unquestionably ineligible to the office to which he was appointed. So in the case of *Peck* v. *Belknap* (130 N. Y. 394), where there was a plain attempt to evade the Civil Service Law by an appointment clearly prohibited by the statute. But in these taxpayers' actions, as in mandamus proceedings, where the appointee holds under color of right and a disputable question is present, the title will not be tested, but the claimant left to his legal remedy by quo warranto. (*McLaughlin* v. *Yonkers*, 174 N. Y. 450, 462; *Greene* v. *Knox*, *supra*.)

In the case before the court the defendants hold office under the resolution and appointment of the commission of public safety, the authorized appointing power. The commission acted under the local law which had been adopted by the common council of the city and approved by the mayor, and upon the advice of the corporation counsel, its legal adviser under the charter. On its face the appointment is regular and the departmental officers in question hold their offices under color of title. It is only when inquiry is made into the adequacy of the proceedings of the common council in adopting a local law containing many provisions, that the question here arises. If these officers were palpably ineligible for appointment, had there been a plain disregard of a clear statutory prohibition, so that the defendants could be held, on a

mere reading of the statutes involved, to be illegally in office, this action would lie. (*Forman* case, *McLaughlin* case and *Knox* case.) If on the other hand the statutes are so vague and indefinite in their language, and so uncertain in their import that a question arises as to their significance when read together, so that there is a real dispute and contest in good faith in their construction and application, this action cannot be maintained. Therefore, this action must turn on the question whether or not there was such a plain disregard of the provisions of clear and unambiguous statutes as practically to indicate bad faith.

Articles 2 and 3 of the City Home Rule Law provide for the enactment of local laws by cities and for the legislative intent and construction of the statute itself. By section 15 of that statute (as amd. by Laws of 1925, chap. 397) certain local laws passed by a common council and approved by the mayor must be submitted by referendum for the approval of the electors. Subdivision 5 of that section, when read in connection with the city charter, is the provision out of which arises the dispute in this case; and in so far as material here it provides that a local law must be so submitted if it " abolishes, transfers or curtails any power of an elective city officer * * *."

It is contended by the plaintiff that the local law which increased the number of the members of the public safety commission from three to five, and under which the departmental officers in question were appointed, curtailed the powers of the mayor and the city treasurer, and accordingly the enactment will not come into effect as a local law until so submitted to and approved by the electorate. The corporation counsel and the defendants contend that the local law does not curtail the powers of elective officers and that such submission to the electors is not required by subdivision 5 of section 15 of the City Home Rule Law, in view of the peculiar provisions of the city charter. There is no occasion and it is not intended here, to determine whether such a submission to the electors is necessary or not. It is only necessary to determine whether there are statutes involved here whose language is vague and indefinite, whose construction is difficult, and whose legal import is uncertain; because, if that is so, this action cannot be maintained.

· The general powers and duties of the mayor, the city treasurer and the city clerk are set forth in title III of the city charter. The commission of public safety is set up and provided for in title XI thereof, wherein are set forth its powers and duties. And in this latter article it is provided that " the mayor, city treasurer and city clerk by virtue of their offices, and while in office

shall be and are hereby constituted commissioners and members of the board of public safety." Apart from the fact that the mayor shall be the president, and shall have the power to call out the police and fire departments in case of emergency, no power or duty appears to be given to him as mayor in relation to those departments, nor is there any power or duty given the mayor with reference to making the appointments in question. It does not appear from the charter to what degree the commission of public safety is a legal entity, to what extent, if any, it may be regarded as a body corporate, nor what its legal status shall be. But it is evident from the entire act that it is a separate governmental agency possessing practically all of its powers and duties apart from the powers and duties of its members. It also appears that its power and duties may be augmented by ordinance of the common council. The City Home Rule Law affects the cities throughout the State, with their varying charters and forms of government. Its construction is for that reason alone highly important. The latter statute itself provides by section 31 that it shall be liberally construed, and that the powers granted therein shall be in addition to the other powers granted to cities. Doubtless many other considerations should be brought to bear in the construction of this statute, and in determining its relation to other provisions in the city charter.

It is thus made evident that the construction of this comparatively new statute, and its application to the provisions of the charter of the city of Rensselaer, which in themselves are indefinite and uncertain, may well give rise to disputed questions of law, that will be involved and difficult, and that will remain uncertain until passed upon by the court of last resort. As was indicated by the Court of Appeals in the *Rogers* case and in the *McLaughlin* case, and by the Appellate Division in the *Forman* case (*supra*), taxpayers' actions to prevent the payment of official salaries do not have for their purpose the construction of vague and indefinite statutes, nor the determination of involved and difficult questions of law; but may be maintained to prevent payments which plainly are unauthorized, or such as are clearly forbidden. The title to office in this case, which under the cases may be viewed collaterally, is at most uncertain; the payment of the salaries in question is not plainly unauthorized, nor clearly prohibited. Therefore, this action cannot be maintained. Judgment on the pleadings is granted in favor of the defendants, dismissing the complaint, with costs.

Ordered accordingly.