JAY C. TOOLY, Plaintiff, *v.* TOWN OF WILNA and Others, Defendants.

Supreme Court, Jefferson County, August 1, 1933.

*John H. O'Brien*, for the plaintiff.

*James J. Butler*, for the defendants.

SMITH (E. N.) J.   This is a taxpayer's action, brought under and pursuant to the provisions of section 51 of the General Municipal Law, which, so far as pertinent herein, reads as follows: " All officers,  *  *  *  acting  *  *  *  for and on behalf of any  *  *  *  town,  *  *  *  and each and every one of them, may be prosecuted, and an action may be maintained against them *to prevent any illegal official act* on the part of any such officers,  *  *  *  or *to prevent waste or injury to,* or *to restore and make good, any property, funds or estate of such*  *  *  *  *town,*  *  *  * by any person  *  *  *  whose assessments shall amount to one thousand dollars,  *  *  *  in the  *  *  *  town,  *  *  *  to prevent the waste or injury of whose property the action is brought."

On the 17th day of September, 1932, the town of Wilna, through its proper officers, entered into a written contract with the defendant Morris C. Soper whereby it agreed to deliver, at the quarry of the said town located on the Carthage-Antwerp highway in said town, approximately 12,000 tons of crushed stone for use in the construction of the Carthage-Lowville State highway (Contract No. 3379), at a price agreed upon, which was to be paid by the party of the second part upon monthly estimates.   The town was to be prepared

to make daily delivery of 600 tons of stone from May 15, 1933, until said highway contract should have been completed.

The town has entered upon the performance of its part of this contract, and the operation of its stone-crusher to prepare such stone has resulted in the employment of some laborers, under the work relief provisions of the Emergency Relief Act (Laws of 1933, chap. 567). The operation of the quarry for the purposes of such employment has had the approval of the State Temporary Emergency Relief Administration, by reason of which approval the town receives from the State forty per cent refund of the audited payrolls in connection with the project.

The ground of the motion for a temporary injunction herein is that the town is without power to use the stone from its quarry for other than town highway purposes, and that, therefore, the Soper contract is illegal, and that the operation of the quarry for other than town highway purposes should be enjoined.

Section 51-a of the Highway Law provides, so far as applicable, as follows: " The town board of a town may contract for and purchase land in the name of the town containing a gravel bed or other material for use *on the public highways* and bridges *of the town.*" Under the authority granted by this section, the town of Wilna purchased the quarry in question and, pursuant to the provisions of section 50 of the Highway Law, erected a stone-crusher.

The crushed stone to be furnished under the Soper contract is not for a town highway purpose, but for a State highway purpose.

Prior to the enactment of section 51-a, towns were without authority to purchase quarries or gravel beds, but purchased stone and gravel from private individuals. Towns are municipal organizations with limited powers, and they have only such powers as are expressly conferred by statute or follow by necessary implication from powers expressly conferred.

The act of the town officials in entering into the Soper contract and in crushing stone and selling it for other than town highway purposes was an illegal act. The town has no power to sell stone. This illegality is not saved by the fact that the town, in getting out the stone under the Soper contract, employs persons for whom it cares under the Emergency Relief laws. The argument to this effect is specious. The defendant Soper, having the contract for the construction of the Carthage-Lowville State highway, had to buy stone for such purpose, and to get out this stone would require the employment of labor by employers engaged in private enterprise. The public welfare argument defeats itself, because the effect of the town's furnishing the stone from its crusher is to deprive others

of opportunity to labor and to be compensated without taxation, on the one hand, and on the other hand to weaken the tax-paying power of private enterprise engaged in the business of selling crushed stone; moreover, as the State pays the town, out of emergency relief funds, forty per cent of the payroll in running the town crusher, the town of Wilna is profiting at the expense of the tax-payers of the State at large — a vicious result of unlawful conduct.

The Soper contract being illegal, of course the individual officers of the town, responsible for the execution of the contract, are personally liable for any loss which may ensue to the town.

The act of the town in furnishing crushed stone for other than town highway purposes being illegal, may such act be restrained at the instance of a taxpayer of the town? The plaintiff brings this action as such taxpayer. Section 51 of the General Municipal Law in express terms authorizes injunctive relief against town officers (a) " to prevent any illegal official act." That constitutes a distinct and separate ground for a taxpayer's action. A second ground is " to prevent waste or injury to any property, funds or estate " of a town.

It is obvious that to hold that every illegal act of public officials in the exercise of powers granted is subject to restraint at the instance of a taxpayer would lead to a multiplicity of lawsuits, instituted in many instances where no public interest was involved, and over petty, technical violations. This is what actually happened. So many taxpayers' actions were being brought, under this section, in cases where no real public interest was involved, that the Court of Appeals has construed the section so as to carry out its real purpose and at the same time prevent vicious or spite actions; and, to that end, it has limited the right of a taxpayer to commence such an action to cases where there has been a waste of public funds or property or where real public mischief arises from an " illegal official act," which words it has construed. (*Rogers* v. *O'Brien*, 153 N. Y. 357; *Knowles* v. *City of New York*, 176 id. 430; *Altschul* v. *Ludwig*, 216 id. 459; *Smith* v. *Hedges*, 223 id. 176; *Western New York Water Co.* v. *City of Buffalo*, 242 id. 202; *Campbell* v. *City of New York*, 244 id. 317.)

In *Rogers* v. *O'Brien* (*supra*) (under the act of 1872, the predecessor of section 51 of the General Municipal Law) the court said: " The words ' to prevent any illegal official act ' * * * plainly relate to acts germane to the purpose of the new legislation, which was to extend the remedy for the protection of taxpayers *against frauds and peculations of public officials* and *to prevent usurpation by public bodies or agents, of powers not granted, the exercise of which may imperil the public interests.* * * * The courts, prior to this

legislation, were accustomed to interfere *to prevent usurpation of powers by public officials, from which public injury might result, and to restrain illegal acts threatened, which, if performed, would produce public mischief.* * * * It is absurd to suppose that the legislature, by the statute, intended to draw into the preventive jurisdiction in equity, at the instance of any taxpayer, any proposed illegal official act, irrespective of the fact whether the act sought to be restrained involves a waste of public property or a violation of public rights, or any injury to the interests of taxpayers, as such."

In *Knowles* v. *City of New York* (*supra*) there was a bridge contract; there was no doubt as to the power of the city to make a proper contract; the criticism was of the terms of the contract, on the ground that they were illegal. The court, in refusing to avoid the contract on this ground, said: " If these provisions avoided the contract, still as the commissioners might immediately after the decision of this court declaring their illegality have without competition or advertisement entered into a new contract with the steel company upon the same terms and conditions, * * * it is clear that they could have waived the illegal conditions. Hence it is not within the power of the taxpayer to cancel or annul a contract which the commissioners determined to continue in force."

In *Altschul* v. *Ludwig* (*supra*) the court reviews the history of the legislation in respect of taxpayers' actions, and says: " If * * * the plaintiff can succeed it must be by virtue of the provisions of section 51 of the General Municipal Law which authorize the maintenance of a taxpayer's action to prevent an ' illegal official act.' * * * The mere illegality of the official act in and of itself does not justify injunctive relief at the request of the taxpayer. To be entitled to this relief, when waste or injury is not involved, it must appear that *in addition to being an illegal official act the threatened act is such as to imperil the public interests or calculated to work public injury or produce some public mischief.*" In this case there was no waste of public funds; a theatre had been built by private capital, and a taxpayer was allowed to maintain an action to restrain a violation of the Building Code which imperiled the public interests. The court said: " but *when the board acts beyond its limited statutory jurisdiction its action is void and in such cases the courts may and in proper cases doubtless will review and correct action taken by the board in excess of its authority.*"

*Smith* v. *Hedges* (*supra*) was a taxpayer's action to compel a reaudit of a claim filed against a board of supervisors. The judgment for the plaintiff was reversed because the trial court had failed to pass upon an essential question of fact. The court, in the prevailing opinion, said: " The trial court * * * found for the

defendant on the question of fraud and collusion. \* \* \* It matters little whether such an audit is branded as fraudulent or as without jurisdiction. It is illegal with either brand. If the board [of supervisors] was deceived, there should have been a *finding of of fraud;* if it was not deceived, the fact of knowledge should have been found." The dissenting opinion of Judge CARDOZO contains interesting language as follows: " *The scope of the taxpayer's action has steadily expanded. (Altschul v. Ludwig, 216 N. Y. 459.)* This case is fairly within its purpose. *We must not limit the just effectiveness of the remedy by any narrow construction.*"

*Western New York Water Co.* v. *City of Buffalo (supra)* was an action brought to restrain the defendant city frcm selling water to the Iroquois Gas Corporation, to be used on its property outside of the corporate limits of the city. In the opinion of the court is is said: " We shall *assume, without deciding, that it is illegal for the city* of Buffalo to deliver water to the Gas Corporation within the city with the knowledge and intention that it ¡will and shall be then conducted by said Gas Corporation to its premises outside the city for use thereon. \* \* \* Mere illegality is not enough. The very nature and purpose of a taxpayer's action like the present one presume that there will be more than illegality in order to enable him to intervene. *The basic theory of such an action is that the illegal action is in some way injurious to municipal and public interests and that if permitted to continue it will in some manner result in increased burdens upon and dangers and disadvantages to the municipality* and to the interests represented by it and so to those who are taxpayers. It was not the intention of the statute that a taxpayer shall be allowed to intervene and bring to the decision of the courts every act of a municipal officer which may be claimed to be illegal although concededly it is entirely innocuous."

*Campbell* v. *City of New York (supra)* was a taxpayer's action to restrain the defendant city from awarding subway contracts, on the ground that the contracts contained provisions as required by the Labor Law as to the standard of wages to be paid by contractors, and that such provisions of the Labor Law were illegal. Chief Judge CARDOZO, writing for the court, after showing that the State Labor Law was enacted under a constitutional warrant, said: " If the Constitution does not make it illegal to place this promise in the contract, the plaintiffs may not be heard to insist that the promise shall come out. Their right of action as taxpayers is measured by the statute [General Municipal Law, § 51]. They must show an illegal act or waste of public property. Here the act to be restrained is one commanded by the statute. The public officers before us are directed by the statute to insert in the contract

the very provision that the plaintiffs are seeking to remove. There can be no illegal act nor waste of public moneys in the mere adherence to the commands of a constitutional enactment. * * * Another form of contract might be more expedient or cheaper. The courts do not sit in judgment upon questions of legislative policy or administrative discretion. The taxpayer must point to illegality *or fraud.*"

It follows, from the language of the foregoing decisions, that in an action under section 51 of the General Municipal Law the taxpayer must allege and prove something more than mere illegality; he must show either (a) that waste of or injury to municipal property follows or would follow from the illegal act, or (b) where such waste or injury is not involved, that the act is such as to imperil public interests, or (c) is calculated to work public injury or produce some public mischief, or (d) that fraud or collusion exists, or that there is a fraud upon public rights, or (e) that there is a usurpation of powers not granted.

It has already been noted that in the instant case the act of the town in operating a stone-crusher to get out stone for other than town highway purposes is *ultra vires* of the town. There is a distinction between an illegality which arises where the act is *ultra vires* of the municipality, and an illegality which arises from action or conduct *intra vires* of it but where there has been some illegality in the procedure of carrying out an existing power. Where the act is *ultra vires*, to hold that in a taxpayer's action it would be necessary to show either waste, injury to public property or public mischief resulted or would result from the illegal official act would be tantamount to flouting the express language of the statute and to destroying one of the main purposes of the act itself. It may well be that where the act is *ultra vires* it *ex necessitate* involves waste, because it involves work by public officials which, as such, they have no right to do and the expenditure of public moneys which for such purpose they have no right to expend. The legislation which culminated in section 51 of the General Municipal Law reveals that it was on account of the inadequacy of the other remedies to prevent illegal conduct that the law was enacted. Of course a town board itself would have the power to end an illegal practice, and such would be its duty; but how would it be expected that a town board which authorized the illegal practice would prosecute itself for its own illegal conduct? It was because of the futility of such a remedy that the provision as to illegality was placed in the statute. An official act illegal because it is *ultra vires* is entirely different from an official act illegal in the form of the performance of an act *intra vires*. It is the latter class of actions which are covered in the aforementioned cases wherever in any of them there has

been a denial of a taxpayer's right of action. In those cases the thing to be done was within the powers of the municipalities. To illustrate: In the case of *Western New York Water Co.* v. *City of Buffalo (supra)* it was clearly within the power of the city to deliver water to the gas corporation within the corporate limits of the city; and this is all it did. The gas corporation, at its own expense, piped the water from its own land within and carried it to its own land without the limits of the city. The Court of Appeals passed upon the question involved by assuming, without deciding, the illegality of the act; but the act was the act of selling water, which was *intra vires* of the city.

In the instant case the illegal official act consists in selling crushed stone. This the town has no power to do. Its only power is to maintain the quarry to crush stone " for use on the public highways of the town." The conduct of the town officials constitutes such a flagrant flouting of the limitations of the statute, and their acts in this respect are so clearly beyond their powers as to amount to usurpation of power. Usurpation of power by public officials constitutes an assault upon law and order and is fraught with public mischief.

The defendant Soper is entitled to no consideration, because the illegality of the conduct of the town officials was as well known to him as to the town officials themselves; in any event, ignorance of the law would give him no excuse.

The motion for temporary injunction restraining the illegal official conduct of the town and its town officials must be granted.

Ordered accordingly. Form of order to be settled upon two days' notice, unless agreed to.